934 F.2d 1104
 56 Fair Empl.Prac.Cas. 250,
56 Empl. Prac. Dec. P 40,844, 67 Ed. Law Rep. 1109
 Edyna Marie SISCHO-NOWNEJAD, Plaintiff-Appellant,
v.
MERCED COMMUNITY COLLEGE DISTRICT; Board of Trustees of
Merced Community College District; Bruce Pressly; Margaret
Randolph; Richard Rodini; Robert Ohki; Richard Parker;
Dr. E.W. Bizzini; James Edmonson; Walter Crawford;
Anthony Rose; William C. Martineson; Dean Ron Williams;
Luc Janssens; Alan Beymer, in their official capacity as
members of the Board of Trustees and Administrators of
Merced Community College District, Defendants-Appellees.
 No. 89-15874.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 10, 1990.
Decided June 13, 1991.
 
 Katherine Hart, Fresno, Cal., for plaintiff-appellant.
 Benjamin L. Ratliff, Eldridge, Anderson & Weakley, Fresno, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before TANG, FLETCHER and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Edyna Sischo-Nownejad, an art instructor at Merced Community College on Merced campus, brought suit against the college and college officials alleging age and sex discrimination. Her complaint alleges that because of her age and sex, the defendants harassed her and subjected her to different treatment regarding class assignments and other working conditions. During the period in question, Sischo-Nownejad was 52-58 years of age. At the time, she was the only female, and one of the oldest, full-time faculty members in the art department.
 
 
 2
 The district court granted summary judgment for the defendants. The court held that Sischo-Nownejad had failed to prove a prima facie case of intentional discrimination pursuant to Title VII, the Age Discrimination in Employment Act, and 42 U.S.C. Sec. 1983, and that no triable issue of material fact existed regarding her second Sec. 1983 claim and her related state law claims. Sischo-Nownejad appeals from the grant of summary judgment.[1] We affirm in part and reverse in part.
 
 I. FACTS[2]
 
 3
 Sischo-Nownejad has been employed as a faculty member in the Merced College art department since 1968. The college ordinarily bases the assignment and scheduling of classes on the input of faculty members, and senior faculty who have developed particular courses are normally given the first choice of teaching them. Further, division chairpersons customarily consult with faculty members regarding their need for supplies. The college followed these practices with regard to the other faculty members throughout the period in question, but did not do so with regard to Sischo-Nownejad. Instead, from 1981 to 1986, division chairpersons failed to consult with her about which courses she wanted to teach, gave her teaching assignments that she did not want, and reassigned courses that she had developed and taught for many years. From 1982 to 1988, they also failed to consult with her regarding her need for supplies and--although the other faculty members received all the supplies necessary--she received none. Moreover, from 1981 to 1983, the division chairpersons monitored the enrollment of her classes but not the enrollment of classes taught by others.
 
 
 4
 In March 1981, Sischo-Nownejad protested to defendant Williams, a college dean, regarding her class assignments. She stated that defendant Janssens, her division chairperson, had reassigned some of her high-enrollment courses to himself, regardless of the fact that she had developed the classes. Williams took no action. Sischo-Nownejad then wrote to Williams and sent a copy of the letter to the president of the college and the board of trustees. Janssens responded by filing a complaint with the faculty ethics committee that accused Sischo-Nownejad of charging him with unprofessional conduct in a widely disseminated letter, violating department procedure by the copying and sale of art department works, and physically abusing another art department teacher. He did not send Sischo-Nownejad a copy of the complaint. The ethics committee then violated its own policies by conducting an investigation that involved the entire faculty senate, rather than merely the ethics committee, with no advance notice to Sischo-Nownejad. Janssens's complaint resulted in an admonishment against Sischo-Nownejad, which was included in her personnel file.
 
 
 5
 In 1982, Sischo-Nownejad took a leave of absence for medical reasons. When she returned to work, she found that large file cabinets had been moved into her office during her absence. College officials criticized her for allowing her daughter to use her faculty parking space and said that if the use continued, the space would be taken away. Sischo-Nownejad responded that she was on crutches and that her daughter was providing transportation; the defendants took no further action regarding the parking space. The defendants also criticized Sischo-Nownejad for not being on campus enough hours to fulfill her contractual obligation, for failing to attend division meetings, and for being absent during her office hours. Sischo-Nownejad denied the allegations.
 
 
 6
 In February 1983, Sischo-Nownejad submitted a written request for a leave of absence. The defendants denied her request, stating that the semester had already progressed too far to grant the leave. Sischo-Nownejad sought reconsideration and defendant Martineson, president of the college, asked for clarification on the type of leave requested. After soliciting information on the types of leave available, Sischo-Nownejad requested a paid sabbatical leave or an unpaid professional development leave. The letter that her attorney wrote to Martineson requesting the leave stated that Sischo-Nownejad was under no medical restrictions and that, unless advised to the contrary by her doctors, she would continue to fulfill her contractual obligations. Martineson did not rule on the request for reconsideration, and Sischo-Nownejad withdrew the request seven months later.
 
 
 7
 Throughout the period in question, the defendants made numerous statements indicating age and gender bias. These statements include a reference to Sischo-Nownejad as "an old warhorse" and a characterization of her students as "little old ladies [who] have their own art studio." Janssens once stated, "There she is with her little group of women." He also made sarcastic remarks regarding "you women's libbers." Martineson twice urged Sischo-Nownejad to retire, a suggestion repeated by the dean of personnel.
 
 II. PROCEDURAL HISTORY
 
 8
 Sischo-Nownejad's complaint contains several claims for relief. She alleges that the defendants discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act; that they discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act; and that they deprived her of equal protection and the right to privacy, in violation of 42 U.S.C. Sec. 1983. She further alleges that the defendants deprived her of equal protection in violation of Article I, Sec. 7 of the California Constitution. She claims that their alleged age and sex discrimination constitutes a violation of the California Fair Employment and Housing Act, as does their alleged refusal reasonably to accommodate her handicap of high blood pressure by granting her a leave of absence. Finally, she alleges that the defendants breached an implied covenant of good faith and fair dealing in her employment contract.
 
 
 9
 The district court granted the defendants' motion for summary judgment on all claims. The court held that Sischo-Nownejad had failed to establish a prima facie case of intentional age or sex discrimination pursuant to Title VII, the Age Discrimination in Employment Act, and Sec. 1983. It further held that no triable issue of material fact existed pursuant to Sec. 1983 on the question whether the defendants had violated Sischo-Nownejad's right to privacy.[3] Because of its holding that Sischo-Nownejad had failed to demonstrate age or sex discrimination pursuant to Title VII and the Age Discrimination in Employment Act, the district court also held that she had failed to demonstrate age or sex discrimination pursuant to Article I, Sec. 7 of the California Constitution[4] and the California Fair Employment and Housing Act. The court held that no triable issue of material fact existed pursuant to the Fair Employment and Housing Act on the question whether the defendants had failed reasonably to accommodate Sischo-Nownejad's high blood pressure by granting a leave of absence. Finally, the court held that Sischo-Nownejad could not recover for breach of an implied covenant of good faith and fair dealing because California law limits the application of tort damages in employment situations.[5]
 
 
 10
 The district court denied the defendants' request for attorney's fees pursuant to 42 U.S.C. Sec. 1988. The defendants do not appeal this ruling. They do, however, request that we exercise our discretion and award them their costs and attorney's fees on appeal.
 
 
 11
 III. TITLE VII AND AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIMS
 
 A.
 
 12
 Title VII of the Civil Rights Act makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. Sec. 2000e-2(a)(1). The Age Discrimination in Employment Act forbids the identical conduct when the discrimination is "because of such individual's age." 29 U.S.C. Sec. 623(a)(1). A plaintiff may show violations of these statutes by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); Jordan v. Clark, 847 F.2d 1368, 1373 (9th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989); Equal Employment Opportunity Commission v. Borden's, Inc., 724 F.2d 1390, 1392 (9th Cir.1984). Disparate treatment involves intentional discrimination. Borden's, 724 F.2d at 1392. Disparate impact involves a facially neutral employment criterion that has an unequal effect on members of a protected class; discriminatory intent need not be proved. Id. at 1392-93. A hostile work environment requires the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66-67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); Young v. Will County Dep't of Public Aid, 882 F.2d 290, 294 (7th Cir.1989); Jordan, 847 F.2d at 1373.
 
 
 13
 Sischo-Nownejad's claims are based exclusively on a theory of disparate treatment.[6] In order to prove disparate treatment, a plaintiff may assert either that the employer's challenged decision stemmed from a single illegitimate motive (i.e., sex discrimination) or that the decision was the product of both legitimate and illegitimate motives. Price Waterhouse v. Hopkins, 490 U.S. 228, 244-48, 109 S.Ct. 1775, 1788-89, 104 L.Ed.2d 268 (1989). In the former case, the plaintiff may establish a prima facie case by introducing evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).[7] The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. Id. If the employer does so, then the burden returns to the plaintiff to prove that the articulated reason is pretextual. Id.; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). Ultimately, the question is whether it is more likely than not that the employer's conduct was motivated solely by intentional discrimination. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). In other words, does the preponderance of the evidence tend to support the conclusion that the action resulted from a discriminatory motive? The analysis in a case involving mixed motives is somewhat different. The Price Waterhouse plurality found the Burdine formula unsuitable for mixed motives cases. Price Waterhouse, 490 U.S. at 244-48, 109 S.Ct. at 1788-89. Instead, it adopted a simpler approach. Under Price Waterhouse, the plaintiff must show that it is more likely than not that a protected characteristic "played a motivating part in [the] employment decision." Id. at 244, 247 n. 12, 109 S.Ct. at 1787, 1789 n. 12. Once that is done, the employer may escape liability only by proving by way of an affirmative defense that the employment decision would have been the same even if the characteristic had played no role. Id. at 243-47, 109 S.Ct. at 1787-88.
 
 
 14
 In opposing the summary judgment motion, Sischo-Nownejad relied on a single-motive theory.[8] Because her complaint survives summary judgment on that theory, we need not decide here whether a mixed motives theory would be applicable as well.[9] Sischo-Nownejad's burden on summary judgment was merely to establish a prima facie case and, once the employer articulated a legitimate, nondiscriminatory reason for its actions, to raise a genuine factual issue as to whether the articulated reason was pretextual. See Lowe v. City of Monrovia, 775 F.2d 998, 1008 (9th Cir.1985), as amended, 784 F.2d 1407 (1986).[10] Because she met that burden, we hold that the district court committed reversible error in granting summary judgment to the defendants on her claims under Title VII and the Age Discrimination in Employment Act.
 
 B.
 
 15
 In order to show a prima facie case of discrimination, "a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' " Id. at 1005 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a prima facie case is "very little." Id. at 1009. Normally, when such evidence has been introduced, a court should not grant summary judgment to the defendant on any ground relating to the merits. Id. Even if the defendant articulates a legitimate, nondiscriminatory reason for the challenged employment decision, thus shifting the burden to the plaintiff to prove that the articulated reason is pretextual, summary judgment is normally inappropriate. "[W]hen a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." Id. (emphasis added). Specifically, in evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facie case. Id. at 1008. When that evidence, direct or circumstantial, consists of more than the McDonnell Douglas presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment. Id. at 1009.
 
 
 16
 In Lowe v. City of Monrovia, we reversed a grant of summary judgment on facts similar to those before us today. In that case, a black female plaintiff applied for a job with Monrovia's police force. The city's personnel manager told her that the city had no women or black police officers and "had no facilities." The personnel manager suggested that the plaintiff apply in Los Angeles instead of Monrovia. Lowe, 775 F.2d at 1002. We held that these statements, when viewed in conjunction with the fact that Monrovia had no black police officers at the time the plaintiff applied, created an inference of discrimination sufficient to establish a prima facie case. Id. at 1007. We further held that although the city had articulated a legitimate, nondiscriminatory reason for refusing to hire the plaintiff, the evidence that the plaintiff had introduced to establish her prima facie case was sufficient to create a genuine issue of material fact regarding whether the articulated reason was pretextual. Id. at 1008-09.
 
 
 17
 The defendants in the case before us distinguish Lowe as involving a refusal to hire, not conditions of employment. They suggest that discrimination which manifests itself in different conditions of employment presents a separate problem from discrimination which manifests itself through a refusal to hire, and that more evidence is required to prove a prima facie case of the former than of the latter. We reject this premise. Title VII and the Age Discrimination in Employment Act do not suggest that different standards exist for proving discrimination in hiring versus proving discrimination on the job. Moreover, our precedents indicate the importance of allowing the factfinder to consider the existence of discrimination. "[A]n employer's true motive in an employment decision is rarely easy to discern." As we have previously noted, "[w]ithout a searching inquiry into these motives, those [acting for impermissible motives] could easily mask their behavior behind a complex web of post hoc rationalizations...." Lowe, 775 F.2d at 1009 (quoting Peacock v. Duval, 694 F.2d 644, 646 (9th Cir.1982)). Thus, "the question of an employer's intent to discriminate is 'a pure question of fact.' " Id. at 1008 (quoting Pullman-Standard v. Swint, 456 U.S. 273, 287-88, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982)). We require very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a "searching inquiry"--one that is most appropriately conducted by the factfinder, upon a full record. Were we to increase the amount of proof required to survive summary judgment when conditions of employment are involved, the result would be to remove from factfinders the ability to consider claims that merit full exploration.
 
 
 18
 Applying the standards set forth in Lowe, we hold that Sischo-Nownejad introduced sufficient evidence to give rise to an inference of disparate treatment. Facts introduced through her deposition and the declaration of Penny Lowry, a college records officer, reveal that during the time period in question, Sischo-Nownejad was the only female, and one of the oldest, full-time faculty members in the art department. She has adduced evidence that she was subjected to treatment that differed from that accorded the remainder of the faculty. Division chairpersons reassigned Sischo-Nownejad's high-enrollment courses away from her and assigned her to teach courses that she did not want. They did not provide supplies that she needed, and they monitored the enrollment of her courses but not that of courses taught by other faculty members. "Proof of discriminatory motive ... can in some situations be inferred from the mere fact of differences in treatment." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Moreover, while singling Sischo-Nownejad out for different treatment, the defendants--her superiors--referred to her as "an old warhorse" and to her students as "little old ladies," and made other derogatory remarks indicating age and gender bias. The Supreme Court has stated that "stereotyped remarks can certainly be evidence that [a protected characteristic] played a part" in an employment decision. Price Waterhouse, 490 U.S. at 251, 109 S.Ct. at 1791 (emphasis in original). In this instance, the fact that stereotyped remarks were made by Sischo-Nownejad's superiors at the same time that they were subjecting her to less favorable working conditions is sufficient to raise an inference of discriminatory intent.
 
 
 19
 The defendants attempt to rebut Sischo-Nownejad's prima facie case of intentional discrimination by asserting that the challenged actions occurred for nondiscriminatory reasons. They state that Janssens reassigned some of Sischo-Nownejad's classes to himself, for instance, simply because he enjoyed teaching them. As in Lowe, however, the evidence that Sischo-Nownejad introduced to establish a prima facie case is direct and consists of more than the McDonnell Douglas presumption. Accordingly, that evidence serves a dual purpose. It is sufficient not only to establish her prima facie case, but also to create a genuine issue of material fact regarding whether the defendants' articulated reasons are pretextual. See Lowe, 775 F.2d at 1008-10. Therefore, the district court committed reversible error in granting the defendants' motion for summary judgment on Sischo-Nownejad's Title VII and Age Discrimination in Employment Act claims. We reverse the grant of summary judgment on these claims and remand for a trial on the merits.
 
 IV. 42 U.S.C. Sec. 1983 CLAIM
 
 20
 Pursuant to 42 U.S.C. Sec. 1983, a plaintiff may challenge action committed under color of state law that amounts to a deprivation of federal constitutional or statutory rights. Smith v. Barton, 914 F.2d 1330, 1333 (9th Cir.1990). Sischo-Nownejad alleges that the defendants, a community college and employees thereof, violated her rights to equal protection of the laws by discriminating against her on the basis of age and gender. Section 1983 provides a remedy for violations of the equal protection clause of the fourteenth amendment. See Flores v. Pierce, 617 F.2d 1386, 1388-89 (9th Cir.), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980). Therefore, Sischo-Nownejad states a cognizable claim.
 
 
 21
 In order to prove discrimination in violation of Sec. 1983, a plaintiff must demonstrate that the defendants acted with the intent to discriminate. Peters v. Lieuallen, 746 F.2d 1390, 1393 (9th Cir.1984); Irby v. Sullivan, 737 F.2d 1418, 1424 n. 7 (5th Cir.1984). A plaintiff who fails to establish intentional discrimination for purposes of Title VII and the Age Discrimination in Employment Act also fails to establish intentional discrimination for purposes of Sec. 1983. See Knight v. Nassau County Civil Service Commission, 649 F.2d 157, 161-62 (9th Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981); see also Stones v. Los Angeles Community College District, 796 F.2d 270, 275 (9th Cir.1986). The district court relied on this principle to grant summary judgment on Sischo-Nownejad's Sec. 1983 claim. However, as we explained supra, Part III, the district court erred in concluding that Sischo-Nownejad had failed to present sufficient evidence of intentional discrimination to defeat summary judgment for purposes of Title VII and the Age Discrimination in Employment Act. Evidence that is sufficient to create a genuine issue of material fact for purposes of those statutes also serves to create a genuine issue for purposes of Sec. 1983. See T & S Service Assocs., Inc. v. Crenson, 666 F.2d 722, 724 & n. 2 (1st Cir.1981); Whiting v. Jackson State University, 616 F.2d 116, 121-22 (5th Cir.1980). Therefore, the district court erred when it granted summary judgment on Sischo-Nownejad's Sec. 1983 claim. We reverse the district court on this count and remand for a trial on the merits.
 
 
 22
 V. CALIFORNIA FAIR EMPLOYMENT & HOUSING ACT CLAIMS
 
 A.
 
 23
 The district court granted summary judgment to the defendants on Sischo-Nownejad's Fair Employment and Housing Act claim of intentional sex and age discrimination.[11] The court held that the standard for interpreting the Fair Employment and Housing Act is identical to that used in federal Title VII cases, but it cited a case which is not on point to support this proposition. See Best v. California Apprenticeship Council, 161 Cal.App.3d 626, 207 Cal.Rptr. 863 (1984). Because the district court had granted summary judgment to the defendants on Sischo-Nownejad's Title VII claim, it did the same on her Fair Employment and Housing Act claim.
 
 
 24
 Sischo-Nownejad argues that liability is more readily found under the Fair Employment and Housing Act than under Title VII. See Ibarbia v. Regents of the University of California, 191 Cal.App.3d 1318, 1326-28, 237 Cal.Rptr. 92, 96-98 (1987). We need not resolve this question. Even if the district court was correct in holding that the standards of liability are identical, we have already held that summary judgment was inappropriate on Sischo-Nownejad's Title VII claim. See supra, Part III. Therefore, summary judgment should not have been granted on the Fair Employment and Housing Act claim of intentional discrimination. We reverse on this count and remand for a trial on the merits.
 
 B.
 
 25
 Sischo-Nownejad's second claim under the Fair Employment and Housing Act is that the defendants failed reasonably to accommodate her handicap of high blood pressure by granting her a leave of absence.[12] The record does not give rise to a genuine issue of material fact with respect to this allegation. The facts introduced below demonstrate that Sischo-Nownejad sought a paid sabbatical leave or an unpaid professional development leave. She made no request for a medical leave and, in fact, informed the defendants that she was "under no medical restrictions at the present time." The district court correctly granted the defendants' motion for summary judgment regarding this Fair Employment and Housing Act claim. We affirm on this count.
 
 VI. COSTS AND ATTORNEY'S FEES
 
 26
 The defendants do not challenge the lower court's refusal to grant them attorney's fees pursuant to 42 U.S.C. Sec. 1988, but request that we exercise our discretion to award them their costs and attorney's fees on appeal. They cite no authority for this request, but presumably rely upon our authority to award costs and attorney's fees as a sanction for bringing a frivolous appeal. See Fed.R.App.P. 38; 28 U.S.C. Sec. 1912; Glanzman v. Uniroyal, Inc., 892 F.2d 58, 61 (9th Cir.1989). This appeal was not frivolous, as Sischo-Nownejad's claims obviously were not wholly without merit. See McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981). Therefore, we deny the defendants' request. Costs on appeal are awarded to appellant.
 
 VII. CONCLUSION
 
 27
 We reverse the district court's grant of summary judgment on Sischo-Nownejad's claims of intentional discrimination. Specifically, we remand the following claims for a trial on the merits: (1) Title VII claim of sex discrimination; (2) Age Discrimination in Employment Act claim of age discrimination; (3) 42 U.S.C. Sec. 1983 claim of equal protection violation; and (4) Fair Employment and Housing Act claim of age and sex discrimination. We affirm the remainder of the grant of summary judgment. We deny the defendants' request for attorney's fees and costs, and grant costs to the appellant.
 
 
 28
 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 
 
 
 [1]
 She raises only some of her many claims on appeal. See infra notes 3-5
 
 
 [2]
 For purposes of summary judgment we are required to view the evidence in the light most favorable to Sischo-Nownejad. See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1542 (9th Cir.1988). That is what we do in this section of our opinion. Whether the facts will ultimately be found to be different in one or more respects is a matter that must be determined after a trial on the merits
 
 
 [3]
 Sischo-Nownejad does not appeal this ruling. In referring to her claim under Sec. 1983, her briefs address only the issue of equal protection, and not the issue of her right to privacy. Similarly, her counsel made no reference to the Sec. 1983 right to privacy claim during oral argument
 
 
 [4]
 Sischo-Nownejad does not appeal this ruling. In her briefs and in oral argument the only state law claims she discusses are those arising under the Fair Employment and Housing Act
 
 
 [5]
 Sischo-Nownejad does not appeal this ruling. See supra note 4
 
 
 [6]
 The district court, while acknowledging that Sischo-Nownejad's claims are based on disparate treatment, addressed much of its analysis to theories of disparate impact and hostile working environment. We reiterate that these are distinct theories. Disparate treatment, unlike disparate impact, requires proof of discriminatory intent. International Brotherhood of Teamsters, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. Moreover, disparate treatment, unlike a hostile working environment, need not involve physical and/or verbal harassment. See Meritor Savings Bank v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)
 
 
 [7]
 One way in which a plaintiff may establish an inference of discrimination is by satisfying the four-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973):
 
 
 [1]
 She belongs to a protected class
 
 
 [2]
 She applied for and was qualified for a job for which the employer was seeking applicants
 
 
 [3]
 Despite being qualified, she was rejected
 
 
 [4]
 After her rejection, the position remained open and the employer continued to seek applicants from people of comparable qualifications
 
 
 [8]
 A plaintiff need not choose between a single motive and mixed motive theory at the beginning of the case. The Supreme Court has explained:
 [We do not] suggest that a case must be correctly labeled as either a "pretext" case or a "mixed motives" case from the beginning in the District Court; indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both. Discovery often will be necessary before the plaintiff can know whether both legitimate and illegitimate considerations played a part in the decision against her. At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives. If the plaintiff fails to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if she proves, following Burdine, that the employer's stated reason for its decision is pretextual.
 Id., 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12.
 
 
 [9]
 The Supreme Court did not decide Price Waterhouse, in which it articulated the standards governing a mixed motives case, until after Sischo-Nownejad's complaint was filed. In her briefs on appeal, as well as in oral argument, she argues mixed motives
 
 
 [10]
 Although it may be self-evident, we note here that nothing in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), affects our decision in Lowe. Celotex involved the question whether a party moving for summary judgment satisfies its burden of production by simply pointing to the absence of any record evidence demonstrating the existence of a genuine issue of material fact. Lowe, in contrast, involved the situation where the nonmoving party has produced record evidence--albeit "very little"--giving rise to an inference of intentional discrimination
 Lowe is also unaffected by the Supreme Court's decisions in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Anderson required that when a substantive claim may only be proved by "clear and convincing evidence," a district court considering a motion for summary judgment must take that heightened evidentiary standard into account. The ultimate burden of persuasion in Lowe, however, was that of proving intentional discrimination by a preponderance of the evidence. Matsushita is also not on point. There, the Supreme Court held that when the factual context rendered a claimed antitrust violation implausible because the claim made no economic sense, the plaintiffs must produce more evidence than would normally be necessary in order to defeat summary judgment. No such factual considerations existed in Lowe, nor do they exist in the case before us today.
 
 
 [11]
 The Fair Employment and Housing Act states, in relevant part:
 Sec. 12940. Employers, labor organizations, employment agencies and other persons; unlawful employment practice; exceptions.
 It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
 (a) For an employer, because of the ... sex of any person, to ... discriminate against the person in compensation or in terms, conditions or privileges of employment.
 Sec. 12941. Age; unlawful employment practice by employers; exceptions.
 (a) It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action.
 Cal.Gov.Code Secs. 12940-12941 (Deering 1982 & Supp.1990).
 
 
 [12]
 The Fair Employment and Housing Act states, in relevant part:
 Sec. 19240. Employers, labor organizations, employment agencies and other persons; unlawful employment practice; exceptions.
 It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
 (a) For an employer, because of the ... physical handicap ... of any person, to ... discriminate against the person in compensation or in terms, conditions or privileges of employment.
 Cal.Gov.Code Sec. 12940 (Deering 1982 & Supp.1990).