959 F.2d 239
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gideon T. BISHENA, Plaintiff-Appellant,
v.
MARRIOTT CORPORATION, a corporation, and Host International,
a corporation, Defendants-Appellees.
 No. 91-55225.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 7, 1992.*
Decided April 9, 1992.
 
 1
 Before WALLACE, Chief Judge, JAMES R. BROWNING, Circuit Judge, and JONES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Bishena appeals from the decision of the district court granting appellees', Marriott Corporation and Host International (collectively as "Marriott"), motion for summary judgment against his claims for discrimination based on race and religion. Bishena submits that the district court erred in granting Marriott's motion for summary judgment and alleges that Marriott intentionally violated Title VII, 42 U.S.C. § 2000e.-2000e-17., by subjecting him to discrimination and harassment based on his race and religion, and by discharging him in retaliation for filing discrimination charges against Marriott. We affirm the decision of the district court.
 
 Background
 
 4
 Bishena is a male of Ethiopian descent and a member of the Jewish religion. In December of 1980, Host hired Bishena as a busperson. Bishena was later promoted to the position of bartender. During Bishena's employ, Marriott acquired Host. Bishena's employment with Host continued until December of 1989, when he was discharged.
 
 
 5
 Prior to his discharge, Bishena filed a charge against Marriott with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and harassment based on race and religion. Bishena charged that beginning in September of 1986, and continuing through May of 1988, Marriott subjected him to discrimination because of his race and religious beliefs. According to Bishena, this alleged wrongful conduct took the form of unwarranted written disciplinary reprimands ("write-ups"), abusive language, racial slurs, and threats of violence and personal injury.
 
 
 6
 However, the only substantiated incident of discriminatory conduct alleged by Bishena occurred on August 18, 1987, when Bishena's supervisor criticized Bishena for wearing a Yarmulke on the job. That incident did result in a disciplinary report being written and placed in Bishena's file. Yet, after Bishena established with Marriott that his faith required the wearing of a Yarmulke, the disciplinary write-up was expunged and Bishena was allowed to wear a plain black Yarmulke while on the job. The Yarmulke incident occurred well over 300 days before Bishena filed his charge with the DFEH and EEOC.
 
 
 7
 After receiving right-to-sue letters from the DFEH and EEOC, Bishena filed this suit in the United States District Court for the Central District of California. While this litigation was pending, Marriott discharged Bishena. As a result, Bishena filed a charge of retaliatory discharge against Marriott with the DFEH and EEOC. After receiving his second right-to-sue letter, Bishena amended his complaint to include his allegation of retaliatory discharge.
 
 Standard of Review
 
 8
 We review the district court's grant of summary judgment de novo. Fuller v. Frank, 916 F.2d 558, 561 (9th Cir.1990). We "view the evidence in the light most favorable to the non-moving party to determine whether the substantive law was applied correctly and whether there was any issue of material fact." Smith v. Barton, 914 F.2d 1330, 1333 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2825 (1991).
 
 Discussion
 1. Discrimination--The Prima Facie Case
 
 9
 Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based upon race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1). The purpose of this section of Title VII is to "assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 (1973).
 
 
 10
 The plaintiff in a Title VII action carries both the initial burden of establishing a prima facie case and the ultimate burden of proving discrimination based on one or more of the prohibited grounds set forth in Title VII. Id. at 802. A plaintiff may show a violation of section 703(a)(1) in one or more of three ways: (1) facially neutral policies having a disparate impact on a protected class; (2) the existence of a hostile working environment; or (3) disparate treatment. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir.1991). Bishena's claims implicate both disparate treatment and hostile working environment.
 
 
 11
 a. The Disparate Treatment Claim
 
 
 12
 Disparate treatment involves intentional discrimination. Id. Where the alleged motive is purely illegitimate, as alleged by Bishena, the plaintiff may establish a prima facie case by offering evidence giving rise to an inference of unlawful discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).[1]
 
 
 13
 The evidence required to make out a prima facie case of discrimination may be either direct or circumstantial, and the amount that must be produced is "very little." Sischo-Nownejad, 934 F.2d at 1111. Very little evidence is not, however, synonymous with no evidence. Thus, "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment." Forsberg v. Pacific Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir.1988); Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983).
 
 
 14
 Where there is no direct evidence of the defendant's intent to discriminate, the plaintiff establishes a prima facie case based on disparate treatment by demonstrating membership in a protected class, some adverse treatment, and that the treatment was different for similarly situated non-minority employees. See Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982); Diaz v. American Tel. & Tel., 752 F.2d 1356, 1361 (9th Cir.1985); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 (9th Cir.1987). The plaintiff, thereby, raises an inference of discrimination. Burdine, 450 U.S. at 255.
 
 
 15
 In the context of a motion for summary judgment, the plaintiff's burden is "merely to establish a prima facie case and, once [the defendant articulates] a legitimate nondiscriminatory reason for its actions, to raise a genuine factual issue as to whether the articulated reason was pretextual." Sischo-Nownejad, 934 F.2d at 1110.
 
 
 16
 In reviewing a grant of summary judgment against a plaintiff's claims of discriminatory treatment, the McDonnell Douglas order of proof, inference of discrimination, and shifting of burdens "must be viewed in light of the traditional test for granting summary judgment." Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1459 (1985), cert. denied, 475 U.S. 1048 (1986), overruled on other grounds by, Kennedy v. Allied Mutual Ins. Co., --- F.2d ----, 1991 WL 264813 (9th Cir.1991).
 
 
 17
 Bishena charges that Marriott treated him differently than other non-Black, non-Jewish employees and denied him employment opportunities and benefits which were afforded to non-minority employees. However, Bishena offers no evidence to support his claim.[2] To the contrary, the evidence shows that Marriott assisted in paying to further Bishena's education and accommodated the requirements of his religious faith once they were aware of those needs.
 
 
 18
 Bishena also alleges, as a separate claim for relief, that Marriott discharged him in retaliation for filing discrimination charges with the EEOC. The bare fact that Bishena was dismissed, even when combined with his allegations of discrimination, is not sufficient evidence to establish a prima facie case of discrimination. See Steckl, 703 F.2d at 393; Forsberg, 840 F.2d at 1419.
 
 
 19
 As set forth above, Bishena must demonstrate that, because of his race and/or religion, Marriott treated him differently than other employees. See, e.g., Garrett, 818 F.2d at 1519 (discharged employee established disparate treatment by showing that similarly situated non-minority employees were not discharged for similar violations of equal seriousness). By failing to offer concrete, relevant evidence and relying instead upon purely conclusory allegations of alleged discrimination, Bishena fails to make out his prima facie case. Forsberg, 840 F.2d at 1419.
 
 
 20
 Even if Bishena were to make out his prima facie case, summary judgment would still be appropriate. Where the plaintiff, as Bishena does here, relies on the McDonnell Douglas inference to establish his prima facie case and the defendant articulates a legitimate, nondiscriminatory reason for the alleged discriminatory conduct, the plaintiff must come forward with specific evidence of pretext. Foster, 772 F.2d at 1459-60; Steckly, 703 F.2d at 393.
 
 
 21
 Bishena asserts that the legitimate, nondiscriminatory reasons articulated by Marriott for his disciplinary reprimands and eventual discharge are merely a pretext for discrimination.[3] However, Bishena fails to offer specific, substantial evidence to support his assertion. The district court did not err in granting summary judgment against Bishena's disparate treatment claim.
 
 
 22
 b. The Retaliatory Harassment and Hostile Environment Claim
 
 
 23
 Section 704(a) of Title VII prohibits retaliatory conduct based on an employee's participation in a protected activity such as filing charges of discrimination. 42 U.S.C. § 2000e-3(a). Bishena alleges that from September of 1986 through May of 1988, Marriott harassed him because he had filed discrimination charges with the DFEH and EEOC. However, the record shows that Bishena did not file his charges with the DFEH and EEOC until August of 1988. Bishena cannot in good faith claim that Marriott harassed him because of his charges with the DFEH and EEOC before those charges were even filed.
 
 
 24
 Although Bishena couched his harassment claim in terms of retaliation which is prohibited under section 704(a), Title VII also makes it unlawful for an employer to harass an employee based on membership in a protected class. 42 U.S.C. § 2000e-2(a). See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1037 (9th Cir.1990). Although it is analyzed somewhat differently than disparate treatment, discrimination in the form of harassment creates a hostile working environment actionable under section 703(a)(1). Sischo-Nownejad, 934 F.2d 1109.
 
 
 25
 A hostile working environment requires the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class. Id. To be actionable, such harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67-68 (1986) (internal quotations omitted).
 
 
 26
 There is no evidence that Bishena was subjected to physical harassment of any kind. Outside of the Yarmulke incident, there is no evidence of severe or pervasive verbal harassment based on Bishena's religious faith or race. Accordingly, Bishena failed to make out a prima facie case of discrimination based on a hostile working environment.
 
 
 27
 2. The Doctrine of Continuing Discrimination: Incidents Occurring Beyond the 300 Day Period of Limitations
 
 
 28
 In part, the trial court based its decision on the fact that the only substantiated allegation of discriminatory conduct, the Yarmulke incident, occurred in excess of 300 days prior to Bishena filing his charge with the DFEH and EEOC.
 
 
 29
 Title VII requires that a charge alleging an unlawful employment practice:
 
 
 30
 shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency ... such charge shall be filed by or on behalf of the person three hundred days after the unlawful employment practice occurred....
 
 
 31
 42 U.S.C. § 2000e-5(e); see also Green v. Los Angeles County Superintendent, 883 F.2d 1472, 1473 (9th Cir.1989).
 
 
 32
 Generally, discrimination claims not brought within the limitations period set forth above are not actionable. Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir.1982), cert. denied sub nom., 456 U.S. 971 (1982). However, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period ... [because] the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period." Id. (internal quotations and citation omitted); accord Green, 883 F.2d at 1475.
 
 
 33
 A plaintiff is entitled to base claims on discriminatory acts occurring outside of the 300 day limitations period "if they could show that these acts continued as violations because the supporting discriminatory policy carried forward into the limitations period and had its effect on employees." Williams, 665 F.2d at 924. The doctrine of continuing discrimination does not, however, entitle a plaintiff to recover for claims based on incidents outside of the actionable period unless the plaintiff has raised an inference of intentional discrimination occurring during the actionable period. Id.; Bouman v. Block, 940 F.2d 1211, 1218 (9th Cir.1991); Reed v. Lockheed, 613 F.2d 757, 760 (9th Cir.1980); United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977).
 
 
 34
 Bishena claims that, following the Yarmulke incident, he was subjected to continuous harassment and discrimination. That harassment, Bishena contends, took the form of non-meritorious disciplinary write-ups for failure to ring up bar sales, failure to clean bar and table areas adequately, overpouring drinks, and overcharging customers. Bishena also charges that he was subjected to racial and religious slurs, and threats of physical violence and personal injury. However, beyond the Yarmulke incident, Bishena's claims of discrimination and harassment are conclusory and unsubstantiated.
 
 
 35
 The district court held that Bishena could not recover for any conduct that occurred prior to October 21, 1987, because such conduct occurred in excess of 300 days prior to the filing of his charge with the DFEH and EEOC. The district court found that the Yarmulke incident occurred outside of the 300 day period, and, therefore, could not be the basis for recovery. The district court went on to find that Bishena suffered no adverse consequences as a result of wearing the Yarmulke and was allowed to wear it after Marriott learned of Bishena's Orthodox Jewish faith and the Yarmulke's religious significance.
 
 
 36
 It is implicit in the district court's finding of fact and conclusions of law that it considered Bishena's allegation involving the Yarmulke incident, even though it occurred beyond the 300 day period, and was satisfied that there was no evidence of continuing or systematic discrimination. See Bouman, 940 F.2d at 1218. Those findings are supported by the record. The trial court did not err in denying recovery based on that incident. See Id.; Reed, 613 F.2d at 760.
 
 3. The Retaliatory Discharge Claim
 
 37
 Bishena alleges, as a separate claim for relief, that he was discharged in retaliation for having filed his initial discrimination charge with the EEOC and DFEH.[4] As previously discussed, section 704(a) of Title VII makes it unlawful to retaliate against an employee for filing discrimination charges.
 
 
 38
 The district court granted Marriott's motion for summary judgment against Bishena's claim of retaliatory discharge. The district court's reasons for granting summary judgment are not clearly set forth; however, this court may affirm the district court on any ground supported by the record. United States v. Telink, Inc., 910 F.2d 598, 600 (1990).
 
 
 39
 As with his discrimination claim, the initial burden is on Bishena to come forward and establish a prima facie case of retaliatory discharge. To make out his prima facie case, Bishena must show that he engaged in an activity protected under Title VII, that his activity was known by the alleged retaliator, that he suffered an adverse employment action, and that a causal connection exists between his participation in the protected activity and the adverse employment action. Fahie v. New York City Dept. of Correction, 737 F.Supp. 15, 17 (S.D.N.Y.1990) (citing Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir.1980)); accord Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982).
 
 
 40
 Clearly, Bishena made out the first three elements of his prima facie case. When Bishena filed his charge of discrimination, he engaged in a protected activity. There is evidence that Bishena's supervisors, and surely his employer, knew Bishena filed a discrimination charge. Finally, Bishena suffered an adverse employment action when he was discharged.
 
 
 41
 As to the fourth element, however, the only evidence even suggesting a causal link between Bishena's discharge and his discrimination claim is the fact that Bishena was discharged while his discrimination charges were pending. See Globus v. Skinner, 721 F.Supp. 329, 334 (D.D.C.1989) (the proximity between the time plaintiff engaged in a protected activity and an incident of adverse employment action is sufficient to give rise to inference of retaliation).
 
 
 42
 Assuming that this evidence is sufficient to demonstrate the requisite causal link and establish a prima facie case, Marriott articulates a legitimate and nondiscriminatory reason for discharging Bishena. Bishena's history of disciplinary violations, including written warnings for careless cash handling, combined with his one-time cash shortage in excess of $100, provide ample reason for his discharge. "An employee is not protected by Title VII when he violates legitimate company rules...." Unt, 765 F.2d at 1446.
 
 
 43
 Once Marriott articulates a proper reason for discharging Bishena, the burden of proving that the stated reason was only a pretext for retaliation shifts to Bishena. Cohen, 686 F.2d at 796. As discussed above, in the context of a motion for summary judgment, Bishena must produce specific facts and significantly probative evidence at least raising the possibility of pretext as a genuine issue of disputed fact. Steckl, 703 F.2d at 393. Bishena, however, offered only his own conclusory and unsubstantiated allegations. Marriott was, therefore, entitled to summary judgment against Bishena's claim of retaliatory discharge.
 
 Conclusion
 
 44
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable Robert E. Jones, United States District Judge, District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In so-called mixed-motive cases the analysis is somewhat different. In such cases, "the plaintiff must show that it is more likely than not that [race or religion] played a motivating part in the employment decision." Sischo-Nownejad, 934 F.2d at 1109 (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244-48 (1989))
 
 
 [2]
 In support of his claims, Bishena refers to the declarations of several individuals. Of those, only the declarations of Vincent Fisk and Chris Evans offer arguably relevant testimony. The declarations do substantiate Bishena's claims involving the Yarmulke incident and indicate a certain hostility between the declarants and various supervisors. The declarations of Fisk and Evans do not, however, substantiate Bishena's claim that the conduct alleged by Bishena as discriminatory was motivated by his race or religion, or that Bishena was treated any differently than a similarly situated non-Jewish person of non-Ethiopian descent
 
 
 [3]
 Bishena does not deny that his bank was over $100 short. Rather, Bishena contends that he was "set up" by his supervisors as part of a conspiracy to create cause to discharge him. There are only two keys to Bishena's bank. Bishena had one of those keys with him when his shift concluded. The other key is kept in a safe in the security office. Bishena submits that one of the security personnel used the second key to enter his bank and remove the money and that his supervisors refused to properly investigate the incident. Bishena offers absolutely no evidence to substantiate this conspiracy theory and there is none in the record
 
 
 [4]
 Bishena brought his retaliatory discharge claim under California's Fair Employment and Housing Act, Cal.Government Code § 12940, as well as Title VII. The district court did not distinguish Bishena's FEHA claim and his Title VII claim, and the parties agree that it should be analyzed identically with his Title VII claim. See Levy v. Regents of the Univ., 199 Cal.App.3d, 1335, 245 Cal.Rptr. 576, 581 (1988). The court, therefore, need not separately address the district court's grant of summary judgment against Bishena's FEHA claim