Rita M. PARRY, and Maetrel M. Yetter,

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY.**

No. CIV. A. 97–8092.

United States District Court, E.D. Pennsylvania.

July 13, 1999.

Gavin P. Lentz, Jeffrey W. Ogren, Bochetto & Lentz, P.C., Philadelphia, PA, for Plaintiffs.

Barbara A. O'Connell, Christina Fraccalvieri, Sweeney & Sheehan, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an age discrimination action brought by Plaintiffs, Rita M. Parry ("Parry") and Maetrel M. Yetter ("Yetter") (collectively "Plaintiffs") against Defendant, Jackson National Life Insurance Company ("Jackson") alleging violations of the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C.A. §§ 621–34 (1999) and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43, §§ 951–63 (1991 & Supp.1999) and a claim for the recission of separation agreements between Plaintiffs and Jackson. Jackson's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is presently before the court. For the following reasons, the motion will be granted as to the allegations that Jackson did not retain Plaintiffs at its King of Prussia office in violation of the ADEA and PHRA.

## BACKGROUND

Jackson hired Parry as a brokerage secretary on August 30, 1990 and Yetter as a balance due clerk on December 4, 1989 to work in Jackson's King of Prussia office. Office manager Theresa Marinelli ("Marinelli") interviewed and hired the two. Parry previously had worked at Prudential Insurance Company where she was trained in virtually every area of insurance including new business, old business, death claims and licensing. Yetter had worked at Allstate Insurance Company on automobile, commercial and life insurance. Plaintiffs' positions at Jackson were focused on new business processing.

Parry's duties included: training new employees, retraining current employees, and training life underwriting staff on new procedures. She was responsible for handling the more complex large cases from initial application through approval. Parry also had a great deal of phone contact with insurance agents in regards to issues of approval, status, rated offers and second and third requests for outstanding requirements. Parry's position required her to be totally responsible for the work flow of the Underwriting Department. Yetter's duties included: proofreading new policies for accuracy, notifying agents of any outstanding requirements, verifying the correct amounts on commission checks prior to disbursal to agents and updating the computer with this information.

Plaintiffs received superior and outstanding reviews while employed at Jackson. Several years after Plaintiffs were hired, Jackson hired three young women, Tracy Lowary ("Lowary"), Brenda Nonnemaker ("Nonnemaker") and Karen Bryant Helenski ("Helenski"). Lowary's prior work experience included a position in the field of sports medicine. Nonnemaker was

hired away from piercing ears at the Piercing Pagoda in the King of Prussia Mall. Parry trained the three young women in the basics of insurance. They were soon promoted to supervisory positions above Plaintiffs even though Plaintiffs had expressed to management their hopes of being promoted.

Helenski told one older employee that, "we will be driving you to the home soon." (Charlotte Wilson's October 1, 1998 Dep. at 44). Helenski also would walk past Yetter's cubicle making gagging sounds and said that Yetter did not bath. (Charlotte Wilson's October 1, 1998 Dep. at 46). Helenski stated that "old people don't wash their hair every day." (Charlotte Wilson's October 1, 1998 Dep. at 46). Helenski told a friend that, "you are getting up there ... [and] [p]retty soon you will be one of the old ones." (Charlotte Wilson's October 1, 1998 Dep. at 44). These comments were stated aloud in the office and often in front of other people including regional manager, Kenneth Lipson ("Lipson") and Marinelli.

In late 1994 Jackson initiated "Project Leapfrog" to consolidate operations in the Lansing, Michigan office. The Lansing, Michigan office took over new business processing from the King of Prussia office. All of its new business processing positions were eliminated pursuant to Project Leapfrog. The King of Prussia office became strictly a marketing and sales office.

Lipson and Marinelli determined who would be retained at the King of Prussia office. Plaintiffs were not retained because they did not have the requisite "professionalism" and "attitude" to do sales. (Marinelli's October 1, 1998 Dep. at 81–82). They also lacked sales and marketing experience. Jackson retained Lowary and Nonnemaker.

On December 23, 1994 Plaintiffs received a letter asking them to complete separation agreements. The agreements contained information on enhanced severance packages and a waiver of age discrimination claims. Lipson explained the separation agreements to the whole office, stated "here's one for you older people" and read the waiver provision aloud. (Parry's September 28, 1998 Dep. at 238; Charlotte Wilson's October 1, 1998 Dep. at 12).

Parry asked Lipson if she could keep the agreement to take to an attorney. (Parry's September 28, 1998 Dep. at 223–24). Lipson responded that, "[i]f you don't give it back to me, you are fired and you lose your package. Give it to me or clean out your desk and go home." (Parry's September 28, 1998 Dep. at 223–24). On December 28, 1994 Plaintiffs signed their respective separation agreements. Plaintiffs' last day of employment was June 9, 1995.

On December 29, 1997 Plaintiffs filed suit. Counts I, II and III of the Complaint allege respectively violations of the ADEA, violations of the PHRA and a claim for recission of the separation agreements. Jackson now moves for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. Pretext Age Discrimination Claims

▮ Jackson moves for summary judgment alleging the decision not to retain Plaintiffs at the King of Prussia office does not give rise to a pretext age discrimination claim.[1] Claims of pretext age discrimination under ADEA and PHRA are analyzed under the familiar three steps of the *McDonnell Douglas* line of cases. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643–44 (3d Cir.1998); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995). First, the plaintiff must establish a prima facie case of age discrimination. *See Sempier*, 45 F.3d at 728. Second, if the plaintiff succeeds, a presumption of age discrimination is creat-

ed "that the employer must rebut by stating a legitimate nondiscriminatory reason for the adverse employment decision." *Id.* Third, if a legitimate nondiscriminatory reason is provided, "the plaintiff then has the opportunity to demonstrate that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Id.*

### A. Prima Facie Case

▮ To establish the *prima facie* case, the plaintiff must show: 1) that he belongs to the protected class, 2) that he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having the plaintiff's qualifications. *See Sempier*, 45 F.3d at 728. The plaintiff's task in establishing a *prima facie* case, however, is not intended to be onerous. *See Id.* The *prima facie* case merely "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). Jackson contends that Plaintiffs have failed to establish the second element of a *prima facie* case of age discrimination.[2]

---

1. Jackson neither addressed the allegations that it did not promote Plaintiffs in violation of ADEA and PHRA nor the claim for hostile work environment age discrimination. Consequently, Jackson cannot show the absence of a genuine issue of material fact as to these claims. In regards to the hostile work environment age discrimination claim, the U.S. Court of Appeals for the Third Circuit has not addressed whether such a claim is cognizable. *See Jackson v. R.I. Williams & Assocs., Inc.*, Civ. A. No. 98–1741, 1998 WL 316090 at *2 (E.D.Pa. June 8, 1998). Nevertheless, the court in *Jackson* adapted relevant Third Circuit precedent to determine that the plaintiff can state a claim under the ADEA. *Id.* Moreover two circuit courts have recognized

such a cause of action. *See e.g. Crawford v. Medina General Hosp.*, 96 F.3d 830 (6th Cir. 1996); *Sischo–Nowmejad v. Merced Community College District*, 934 F.2d 1104 (9th Cir. 1991).

2. Jackson also argues that Plaintiffs did not satisfy the fourth element of the prima facie case because they technically were not "replaced." However, this element does not turn on whether the plaintiff was "replaced." *See Simpson*, 142 F.3d at 651 (Pollack, J. concurring). Jackson's decision to retain the young supervisors instead of Plaintiffs at the King of Prussia office clearly satisfies this element. *See, generally Sempier*, 45 F.3d at 729 (stating that the plaintiff "may point to a

To determine the plaintiff's qualifications for purposes of proving the second element of the *prima facie* case, the court uses an objective standard. *See Sempier,* 45 F.3d at 729; *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3d Cir.1990). " '[W]hile objective job qualifications should be considered in evaluating the plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to' consideration of whether the employer's nondiscriminatory reason for discharge is pretext." *Sempier,* 45 F.3d at 729 (quoting *Weldon,* 896 F.2d at 798). "Thus, to deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he has failed to introduce evidence showing he possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext." *Sempier,* 45 F.3d at 729 (quoting *Weldon,* 896 F.2d at 798–99).

Jackson argues that Plaintiffs failed to establish they were qualified for retention at its King of Prussia office because the remaining positions were geared towards sales and marketing, Plaintiffs' prior positions involved new business processing and Plaintiffs admit that they have no sales and marketing experience. Plaintiffs argue that Jackson should have trained them for these sales and marketing positions because of Plaintiffs' intimate familiarity with insurance products. Plaintiffs also assert that this familiarity made them more qualified than the young supervisors who were retained.

Plaintiffs have failed to establish that they were qualified. Plaintiffs admit that they had no sales and marketing experience. They attempt to show that a position at the King of Prussia office after Project Leapfrog did not require sales and marketing experience by arguing that the young supervisors lacked sales and marketing experience.

Plaintiffs, however, submit only bald unsubstantiated assertions as evidence to show that the young supervisors who were retained lacked sales and marketing experience. These assertions actually show that at least one of the young supervisors may have had some sales and marketing experience.[3] To survive a motion for summary judgment, the nonmovant must adduce "more than a mere scintilla of evidence in its favor and may not merely rely on unsupported assertions, conclusory allegations, or mere suspicions." *Harley v. McCoach,* 928 F.Supp. 533, 535 (E.D.Pa. 1996) (internal quotations omitted) (citing *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989)). There simply is no genuine issue of material fact as to whether Plaintiffs were qualified for retention.

### B. Showing of Pretext

Even if Plaintiffs established a *prima facie* case, to survive summary judgment when the employer has demonstrated a legitimate nondiscriminatory reason for the adverse employment action,[4] they must:

point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the em-

---

sufficient age difference between himself and his replacement such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age.") Here Plaintiffs were in their fifties or sixties and the young supervisors were in their twenties. This age difference is sufficient.

**3.** Plaintiffs assail Jackson's decision to hire Nonnemaker away from the Piercing Pagoda located within the King of Prussia Mall. However, Nonnemaker's work at the Piercing

Pagoda likely involved the sale and marketing of piercing products.

**4.** Plaintiffs' lack of sales and marketing experience is a legitimate nondiscriminatory reason for not retaining Plaintiffs at the King of Prussia office. *See Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994) ("The employer need not prove that the tendered reason actually motivated its behavior....")

ployer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). *See Simpson,* 142 F.3d at 644. The first prong does not require the plaintiff to "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, ... nor produce additional evidence beyond her prima facie case[.]" *Simpson,* 142 F.3d at 644 (internal citations omitted). Nevertheless, the plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence" *Fuentes,* 32 F.3d at 764–65 (internal quotations omitted). The second prong mandates that the plaintiff "point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson,* 142 F.3d at 644–45 (citing *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1111 (3d Cir.1997)).

■ Plaintiffs argue that Jackson retained young supervisors at its King of Prussia office after Project Leapfrog even though Plaintiffs had more insurance experience. To determine whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the court must focus on the particular critera or qualifications identified by the employer as the reason for the adverse action. *See Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 528 (3d Cir.1992). The plaintiff "must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated

criterion." *Simpson,* 142 F.3d at 647 (citing *Fuentes,* 32 F.3d at 767).

■ It is clear that Plaintiffs can neither show that they satisfied the criterion identified by Jackson nor that Jackson did not actually rely upon the stated criterion. As previously discussed, Plaintiffs had no sales and marketing experience. Such experience was needed for the remaining positions at the King of Prussia office after Project Leapfrog. Therefore, Plaintiffs' intimate familiarity with insurance is irrelevant. Plaintiffs also fail to show that Jackson did not rely upon the sales and marketing requirement to retain the young supervisors. Plaintiffs did show, however, that one of the young supervisors likely had some sales and marketing experience at the Piercing Pagoda in the King of Prussia Mall. No genuine issue of material fact exists as to whether Plaintiffs have demonstrated that the employer's stated reasons were not its true reasons but were a pretext for discrimination.

## CONCLUSION

An appropriate Order follows.

## ORDER

AND NOW, this 13th day of July, 1999, upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is GRANTED as to the allegations that Jackson did not retain Plaintiffs at its King of Prussia office in violation of the ADEA and PHRA and these claims are hereby DISMISSED WITH PREJUDICE.