**John MUN, Plaintiff,**

v.

**UNIVERSITY OF ALASKA AT ANCHORAGE; Rick Weems; Ron Kamahele; and Mary Howard, Defendants.**

**No. A03–244 CV (JWS).**

United States District Court,
D. Alaska.

June 29, 2005.

tient's health, beyond the disability itself.

**ORDER FROM CHAMBERS**

SEDWICK, District Judge.

### I. MOTIONS PRESENTED

At docket 27, the University of Alaska at Anchorage ("UAA"), Rick Weems, and Mary Howard move for summary judgment on Counts II and III of John Mun's complaint. The motion is opposed. At docket 45, Mun moves to strike material submitted in support of the summary judg-

ment motion. That motion is opposed. Briefing on both motions has been completed. Oral argument has not been requested on either motion, and it would not assist the court.

## II. BACKGROUND

Mun has worked for UAA for a number of years, but three disputes have punctuated his tenure. The first dispute centered on his being denied overtime pay when he was Facilities Scheduling Coordinator and Curriculum Advising and Program Planning Coordinator ("CAPP Coordinator").[1] The second dispute arose when he applied for a promotion to Director of Summer Sessions in August of 2001 but did not get it.[2] The third dispute arose in 2003 after UAA eliminated a position, Curriculum Manager, for which Mun wanted to apply.[3]

As a result of these disappointments, Mun filed three grievances with UAA.[4] In the first, filed on or about October 22, 2002,[5] he complained about not receiving overtime pay. In the second, filed on January 7, 2003, he alleged that Weems, UAA's Chief Enrollment Officer, retaliated against him for complaining about not receiving overtime pay.[6] He also alleged that he received less pay than people who do not share his Korean ancestry.[7] In Mun's third grievance, filed on August 19, 2003, he alleged that his immediate supervisor, Howard, discriminated against him because of the first grievance he filed.[8] UAA denied all three grievances.

Besides filing three grievances with UAA, Mun filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In the first charge, filed on June 20, 2003, he alleged that UAA discriminated against him on the basis of his race and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[9] The EEOC concluded that there was not sufficient evidence to establish that UAA had violated Mun's rights under Title VII.[10] In the second charge, filed on November 17, 2003, he again alleged that UAA had discriminated against him, and also that it had retaliated against him for opposing UAA's alleged discrimination.[11] The parties have not indicated whether the EEOC has finished reviewing Mun's second charge.

On October 17, 2003, between filing his first and second charges with the EEOC, Mun filed a complaint against UAA, Weems, and Howard in this court.[12] In

---

1. Doc. 1 at ¶ 11; admitted in relevant part in doc. 7 at ¶ 11.

2. Doc. 27, affidavit of Rick Weems at 2, ¶¶ 5 and 6, and attachment C.

3. *Id.*, affidavit of Rick Weems at 3, ¶ 8.

4. Doc.1 at ¶ 20, admitted in doc. 7, ¶ 20.

5. Doc. 27, affidavit of Mark E. Ashburn, attachment 3 at p. 5. While there is no dispute about the fact that Mun filed a grievance in October of 2002, neither party has provided the court with a copy of it. The cited document attributes a date of October 22, 2002 to the first grievance, and there is no reason to doubt the accuracy of the date. In any event, the exact day in October on which it was filed is immaterial.

6. *Id.*, affidavit of Mark E. Ashburn, attachment 1.

7. *Id.*, affidavit of Mark E. Ashburn, attachment 1.

8. *Id.*, affidavit of Mark E. Ashburn, attachment 6.

9. *Id.*, affidavit of Mark E. Ashburn, attachment 10.

10. *Id.*, affidavit of Mark E. Ashburn, attachment 11.

11. *Id.*, affidavit of Mark E. Ashburn, attachment 13.

12. Doc. 1.

Count II of the complaint, Mun alleges that UAA, Weems, and Howard discriminated against him on the basis of his race and religion in violation of Title VII and the Equal Protection Clause of the U.S. Constitution. He alleges that they denied him promotions; overtime pay; equal pay; and subjected him to a hostile work environment.[13] In Count III of the complaint, Mun alleges that UAA, Weems, and Howard violated Title VII by retaliating against him for filing a grievance about their alleged discrimination.[14] He claims that the retaliation included prohibiting him from participating in UAA's governance proceedings and subjecting him to a hostile work environment.[15]

At dockets 44 and 51, the court addressed several of the claims presented in Counts II and III of Mun's complaint. At docket 44, the court dismissed Mun's Title VII claims against Weems and Howard because only their employer, UAA, may be held liable for Title VII violations. At docket 51, the court dismissed Mun's equal protection claim against UAA because it is an instrumentality of the State of Alaska and the statute authorizing Mun's claim, 42 U.S.C. § 1983, does not extend to instrumentalities of state governments.

All told, four claims remain: 1) a Title VII discrimination claim against UAA; 2) a Title VII retaliation claim against UAA; 3) an equal protection claim under 42 U.S.C. § 1983 against Weems; and 4) an equal protection claim under 42 U.S.C. § 1983 against Howard.

Pursuant to 28 U.S.C. § 1331 the court has subject matter jurisdiction over Mun's Title VII claims and his equal protection claims under 42 U.S.C. § 1983. However, a prerequisite to the court's exercising its subject matter jurisdiction over Mun's Title VII claims is his having presented those claims to the EEOC for its review.[16] It is not clear whether the EEOC has finished reviewing the second charge that Mun filed, but the agency did fully vet the first charge. That charge contained the same claims that Mun presents in the complaint he filed in this court. Because the EEOC has reviewed those claims, the court has subject matter jurisdiction over them.

Additional facts are noted in the discussion section below.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[17] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[18] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[19] The court must not assess the credibility of this evidence, and

---

**13.** *Id.* at 8, ¶ 31.

**14.** *Id.* at 9, ¶ 35.

**15.** *Id.*

**16.** *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002) (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994)).

**17.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**18.** *Id.* at 325, 106 S.Ct. 2548.

**19.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

must draw all justifiable inferences from it in favor of the nonmoving party.[20]

## IV. DISCUSSION

### A. Summary Judgment Motion

#### 1. Title VII Discrimination Claim Against UAA

Title VII prohibits employers from discriminating against their employees on the basis of their "race, color, religion, sex, or national origin."[21] To avoid summary judgment on his claim that UAA discriminated against him on the basis of his race and religion, Mun must run the analytical gamut constructed by the Supreme Court in *McDonnell Douglas Corp. v. Green.*[22] Under *McDonnell Douglas*, Mun must first establish a *prima facie* case of discrimination.[23] If he does that, the burden of production shifts to UAA to articulate a legitimate, nondiscriminatory reason for its conduct.[24] If UAA articulates such a reason, the burden shifts back to Mun to offer evidence showing, directly or indirectly, that the reason is pretext for illegal discrimination.[25] Mun can demonstrate pretext directly by showing that a discriminatory reason more likely motivated UAA than the reason it offers.[26] Mun can demonstrate pretext indirectly by showing that

UAA's reason is not credible.[27] In establishing pretext, Mun may rely on the evidence he offers to make his *prima facie* case or other evidence,[28] but whatever evidence he relies on must be "specific, substantial evidence of pretext."[29]

■ To establish a *prima facie* case of discrimination, Mun must offer evidence that creates "an inference of unlawful discrimination."[30] Evidence creating that inference includes direct or circumstantial evidence of discriminatory intent.[31] The evidence must show that Mun 1) belongs to a protected class; 2) was performing according to UAA's legitimate expectations; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly-situated employees.[32]

#### a. Racial Discrimination

Mun supports his claim that UAA discriminated against him on the basis of his race by alleging that he was denied a promotion to Director of Summer Sessions and the opportunity to apply for a promotion to Curriculum Manager; denied overtime pay; denied equal pay; and subjected to a hostile work environment.

20. *Id.* at 255, 106 S.Ct. 2505.

21. 42 U.S.C. § 2000e—2(a)(1).

22. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

23. *Vasquez v. County of Los Angeles,* 349 F.3d 634, 640 (9th Cir.2003).

24. *Id.*

25. *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir.2003).

26. *Id.*

27. *Id.*

28. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147—48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

29. *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 969 (9th Cir.2002) (quoting *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996)).

30. *Vasquez,* 349 F.3d at 640 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

31. *Id.* (citing *Cordova v. State Farm Ins. Companies,* 124 F.3d 1145, 1148 (9th Cir.1997)).

32. *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998).

### i. Denied Promotions

#### (1) Director of Summer Sessions

A Title VII claim based on a discrete act of discrimination is "time barred" if it is not filed with the EEOC within time limits provided by Title VII.[33] Claims filed first with a state agency with the power to remedy the discrimination must be filed with the EEOC within 300 days of the discriminatory act.[34] Claims filed directly with the EEOC must be filed within 180 days of the discriminatory act.[35] These deadlines may be equitably tolled.[36]

Mun's claim is time barred. Mun applied for Director of Summer Sessions in early August 2001.[37] His application was rejected on August 30, 2001.[38] He did not file discrimination charges with the EEOC until June 20, 2003, well after either the 180-day or the 300-day deadline for doing so.

Mun offers three reasons why his claim is not time barred. First, he asserts that he did not know that he had been discriminated against until long after his application was rejected. Mun declares that UAA withheld "crucial information" about his application until "after .... January 2003." [39] If this assertion is true, his claim would not be time barred. Second, Mun argues that his claim is timely under the "continuing violations" doctrine. Third, Mun claims that UAA officials told him he could not file a charge with the EEOC until he had exhausted UAA's grievance procedures, and that those representations are grounds for equitably tolling the deadline for filing charges with the EEOC.

None of Mun's arguments is persuasive. Mun's vague reference to "crucial information" is not a "specific fact," as required under Federal Rule of Civil Procedure 56(e), that creates a genuine issue about whether UAA withheld information necessary to Mun's understanding that he had been discriminated against. If that information truly were crucial, he could have described it with ease and specificity.

Mun's "continuing violations" argument also is unavailing. His claim is based on UAA's denying his application for Director of Summer Sessions. That denial was an isolated act of alleged discrimination. The Supreme Court has held that the continuing violations doctrine does not apply to such acts.[40]

Finally, Mun has offered no evidence that would create a genuine issue about whether UAA officials' alleged representations about the need to exhaust UAA's grievance procedures before filing charges with the EEOC are grounds for equitably tolling the filing deadline. UAA denied Mun's application for Director of Summer Sessions on August 30, 2001. From that day, he had as many as 300 days to file charges with the EEOC. However, he did not file a grievance with UAA until October of 2002—more than 300 days after UAA denied his application. Therefore, even if UAA officials really did tell Mun to exhaust UAA's grievance procedures before filing charges with the EEOC, by the time Mun filed grievances with UAA—let alone exhausted UAA's grievance proce-

---

33. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109–110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

34. 42 U.S.C. § 2000e—5(e)(1).

35. *Id.*

36. *Morgan,* 536 U.S. at 113, 122 S.Ct. 2061.

37. Doc. 27, affidavit of Rick Weems at 2, ¶ 5.

38. *Id.,* affidavit of Rick Weems at 2, ¶ 6.

39. Doc. 46, affidavit of John Mun at 20, ¶ 47.

40. *Morgan,* 536 U.S. at 113—115, 122 S.Ct. 2061.

dures—it was already too late to file charges with the EEOC.

### (2) Curriculum Manager

UAA eliminated the Curriculum Manager position in 2003.[41] Mun claims that UAA eliminated the position so that he could not apply for it.[42] To the contrary, UAA explains that "[t]he position was eliminated [after the last person to hold it retired] as a cost-saving move and as part of a restructuring of Enrollment Services."[43]

For two reasons, UAA is entitled to summary judgment on Mun's claim. First, Mun has offered no evidence establishing a *prima facie* case of discrimination. He has not offered any direct evidence of discrimination—evidence that UAA eliminated the position simply so he could not apply for it—or circumstantial evidence of discrimination—evidence that UAA's eliminating the position favored employees similarly situated to him.

The second reason is that Mun has failed to show that UAA's reasons for eliminating the Curriculum Manager position are pretext for unlawful discrimination. UAA explains that it eliminated the position due to budgetary and restructuring concerns. Those are legitimate and nondiscriminatory reasons. Consequently, the burden shifts to Mun to offer specific and substantial evidence that they are pretext for unlawful discrimination. In an attempt to meet that burden, Mun declares that, after UAA eliminated the Curriculum

Manager position, it "hired an unnecessary administrative assistant for Ms. Howard" and "purchased a new van [when it] already had two functioning vans."[44] Besides entirely failing to rebut UAA's restructuring reason, this evidence is not specific or substantial enough to call UAA's budgetary explanation into question.

### ii. Denied Overtime Pay

Mun claims that UAA denied him overtime pay while he was Facilities Scheduling Coordinator and CAPP Coordinator, but did not deny overtime pay to his predecessor as CAPP Coordinator, Jason Brune, who is white.[45] To support this assertion, Mun has submitted two documents. The first indicates that, when he was CAPP Coordinator, UAA considered the position to be "non-exempt"—entitled to overtime pay—for purposes of the Fair Labor Standards Act.[46] The second indicates that, when Brune held the position, UAA considered it to be "exempt"—not entitled to overtime pay.[47] However, contrary to what might be expected based on those classifications, Mun declares that he was treated as an "exempt" employee and denied overtime pay, while Brune was treated as a "non-exempt" employee and allowed overtime pay.[48]

UAA is entitled to summary judgment on Mun's claim regarding his pay as Facilities Scheduling Coordinator because Mun has offered no evidence about either his classification when he held that position or

---

41. Doc. 27, affidavit of Rick Weems at 3, ¶ 8.

42. Doc. 46, affidavit of John Mun at 6, ¶ 17.

43. Doc. 27, affidavit of Rick Weems at 3, ¶ 8.

44. Doc. 46, affidavit of John Mun at 6, ¶ 17.

45. *Id.*, affidavit of John Mun at 4—5, ¶ 12.

46. *Id.*, affidavit of John Mun, ex. K at 1.

47. *Id.*, affidavit of John Mun, ex. K at 2. It appears that Mun has mislabeled his exhibits. To his affidavit he has attached an exhibit K as well as a page behind that exhibit that is not marked either as an exhibit or as the second page to exhibit K. That page is the subject of this footnote. The court will treat it as the second page to exhibit K.

48. *Id.*, affidavit of John Mun at 4 –5, ¶ 12.

how UAA paid him, regardless of his classification. All Mun's evidence relates to his time as CAPP Coordinator.

■ UAA is not entitled to summary judgment on Mun's claim about his pay as CAPP Coordinator because he has offered evidence creating an inference that UAA denied him overtime pay on the basis of his race. Taken in the light most favorable to Mun, his affidavit and the accompanying documents show that UAA denied Mun, but not Brune, overtime pay, even though they performed the same job. Although there could be several explanations for this, UAA offers none. Instead, it argues that Mun's assertion is not supported by any evidence and is not credible. But, as discussed above, it is supported by evidence. And, on summary judgment, the court must not assess the credibility of either Mun's assertion or the evidence supporting it.[49]

One issue that neither party addresses is whether Mun suffered any damages as a result of UAA's alleged failure to pay him overtime when he was CAPP Coordinator. Attached to Mun's affidavit is a memorandum from Weems, dated October 22, 2002, in which Weems concedes that Mun should have been treated as non-exempt, and thus should have been paid overtime.[50] Also, Weems writes that UAA "will pay [Mun] overtime back to July 1, 2001."[51] From the record before the court, it is not clear that UAA actually paid Mun for that overtime. It is also unclear that if UAA eventually did pay overtime to Mun that it paid all sums to which he was entitled. Therefore, the court will not enter summary judgment on this claim.

### iii. Denied Equal Pay

Mun claims that UAA discriminated against him by not paying him the same as people working at the University of Alaska campuses in Fairbanks and Juneau in what he alleges are positions similar to his, and by not paying him the same as two of his co-workers in Anchorage, Brune and Brad Bodde.

#### (1) Fairbanks and Juneau Employees

Mun claims that when he was Facilities Scheduling Coordinator and CAPP Coordinator at UAA, he was paid less than the people working in those positions at the University of Alaska's Fairbanks and Juneau campuses. UAA asserts that the Facilities Scheduling Coordinators and the CAPP Coordinators at the Anchorage, Fairbanks, and Juneau branches perform different duties and that this explains the difference in pay.

■ Mun has failed to establish a *prima facie* case that the reason why he was paid less than the Facilities Scheduling Coordinators and CAPP Coordinators in Fairbanks and Juneau was his race. He has not offered any evidence that the duties of the Facilities Scheduling Coordinator and the CAPP Coordinator in Anchorage are similar to those performed by the Facilities Scheduling Coordinator and the CAPP Coordinator in Fairbanks and Juneau. Although he declares that the positions are "comparable," he does not explain why.[52] This conclusory assertion fails to create a genuine issue about whether the positions are similar.

#### (2) Brune and Bodde

■ UAA is not entitled to summary judgment on Mun's claim that it paid

---

**49.** *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

**50.** Doc. 46, affidavit of John Mun, ex. T.

**51.** *Id.*

**52.** *Id.,* affidavit of John Mun at 3, ¶ 5.

Brune and Bodde more than him because Mun has offered evidence creating an inference that the difference in pay was because of his race. One document shows that Brune and Bodde, both of whom are white,[53] received their pay raises in November of 1999.[54] Another shows that Mun received his pay raise in September of 2000.[55] The document relating to Brune and Bodde cites the marketability of their computer skills as the reason for increasing their salary.[56] The document regarding Mun cites the same reason for his pay raise.[57] It also describes Brune and Bodde as Mun's "peers" and notes that they received a pay increase for the same reason as Mun.[58] Neither document explains why Brune and Bodde—who are Mun's "peers" and who possess the same highly-marketable skills as he does—received their pay increases nearly a year before Mun received his. Taken in the light most favorable to Mun, the documents create an inference that the delay is attributable to his race.

It appears to the court that UAA could have,[59] but did not, seek summary judgment on Mun's discrimination claim based on Brune and Bodde's salary increases on the ground that such a claim is time barred. UAA's alleged discriminatory act—giving Brune and Bodde a raise without also giving one to Mun—occurred in November of 1999. Mun did not file charges with the EEOC until June and November of 2003, long after either the 180– or 300–day time frame under Title VII. Furthermore, Mun's claim still would

be untimely even if the alleged discriminatory act continued until he received his pay raise in September of 2000. Of course, the Supreme Court has held that the time period for filing charges with the EEOC is not a jurisdictional requirement, but instead is subject to waiver, estoppel and equitable tolling.[60] Because UAA has not argued that Mun's claim is time barred, Mun has not had an opportunity to explain why the claim might not be time barred. Accordingly, the court expresses no opinion on the timeliness of this claim.

### iv. Hostile Work Environment

■ To create a genuine issue about whether UAA subjected him to a hostile work environment, Mun must offer evidence showing that 1) he was subjected to verbal or physical conduct of a racial nature; 2) he did not welcome the conduct; and 3) his work environment was altered by conduct which was severe or pervasive to render the environment abusive.[61] If Mun fails to present evidence that could lead a reasonable jury to conclude that UAA subjected him to a hostile work environment, UAA is entitled to summary judgment.[62]

Mun points to several incidents and work practices to support the proposition that his work environment at the University was subject to pervasive and severe racial hostility sufficient that a jury could find there was an abusive environment. Thus, Mun alleges that Weems 1) made derogatory remarks about his and other

53. Doc. 46, affidavit of John Mun at 1, ¶ 2.

54. *Id.*, affidavit of John Mun, ex. A.

55. *Id.*, affidavit of John Mun, ex. B.

56. *Id.*, affidavit of John Mun, ex. A.

57. *Id.*, affidavit of John Mun, ex. B.

58. *Id.*

59. The time bar is pled as an affirmative defense to all of the claims. Doc. 7 at p. 7, ¶ 4.

60. *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061 (citing *Zipes*, 455 U.S. at 393, 102 S.Ct. 1127).

61. *Vasquez*, 349 F.3d at 642.

62. *Id.* at 643.

minority persons' qualifications including their lack of education;[63] 2) threatened his career at UAA after Muns filed an administrative grievance regarding overtime pay but did not threaten grieving white employees;[64] and 3) made comments to him about how minorities cannot get out of an "hourly employee mind set."[65] He alleges that Howard 1) transferred him to the Degree Services department but did not allow him to participate in meetings in, or assign him duties related to, that department;[66] 2) relocated his workstation;[67] 3) threatened his career;[68] 4) questioned his work hours, but did not question a white employee working similar hours;[69] 5) asked him to document his sick leave but he says she did ask white employees Bodde and Kremer to do so and she tolerated the late arrival to work and extended lunch breaks taken by a former assistant, Kae Quick;[70] 6) told him that what he thinks does not matter, and he speculates that she did not tell white employees that;[71] 7) omitted him from some email correspondence;[72] 8) met with white employees about their job descriptions, but refused to meet with him about writing a description of his position until after he filed grievances against her;[73] 9) gave him work instructions that were designed to set him up for failure;[74] 10) repeatedly reprimanded him for his job performance and for mistakes that she makes;[75] 11) forced him to answer phone calls to the office;[76] and 12) made "racially derogatory remarks" to him, of which the only remark identified is that he had difficulty understanding written English.[77] Mun also reports his understanding that white employees "leapfrogged" minority personnel in some sections, that an employee named Vivica Carr who was a minority group member was fired without cause, that Rick Weems was generally favorable to white employees, and the like. However, Mun does not tie these rather vague allegations to his own work environment in a manner which allows them to be evaluated and considered as evidence that his own work environment was abusive.

■ UAA is entitled to summary judgment on this claim. To have created a hostile work environment, UAA must have committed acts of a racial nature that were so severe or pervasive that they created an abusive work environment.[78] Of the acts cited by Mun, only one—Weems's comments about minorities' "hourly employee mind set" was indisputably racial in nature. Howard's "racially derogatory remark" that Mun had trouble understanding written English could as easily be a legitimate (even if inaccurate) perception

63. Doc. 46, affidavit of John Mun at 6, ¶ 16.

64. *Id.*

65. *Id.*, affidavit of John Mun at 9, ¶ 22(h).

66. *Id.*, affidavit of John Mun at 8, ¶ 22(f); 11, ¶ 22(r); 18, ¶ 45(c).

67. *Id.*, affidavit of John Mun at 9, ¶ 22(k); 17, ¶ 42; 18—19, ¶ 45(d).

68. *Id.*, affidavit of John Mun at 9, ¶ 22(*l* ).

69. *Id.*, affidavit of John Mun at 10, ¶ 22(m).

70. *Id.*, affidavit of John Mun at 10, ¶ 22(*o*); 17, ¶ 43; 19, ¶ 45(e).

71. *Id.*, affidavit of John Mun at 10, ¶ 22(p).

72. *Id.*, affidavit of John Mun at 10, ¶ 22(q).

73. *Id.*, affidavit of John Mun at 11, ¶ 22(s).

74. *Id.*, affidavit of John Mun at 11, ¶ 22(u).

75. *Id.*, affidavit of John Mun at 11, ¶ 22(v); 14—15, ¶ 34.

76. *Id.*, affidavit of John Mun at 16—17, ¶ 40.

77. *Id.*, affidavit of John Mun at 17, ¶ 41.

78. *Vasquez*, 349 F.3d at 642.

about Mun's comprehension skills as a racial epithet. Perhaps Howard made other remarks which were less equivocal, but Mun does not identify them. Some of the other acts appeared to Mun to be racial in nature, because it appeared to him that white employees were not subject to the same treatment such as being asked to document sick leave when two other employees were not and a third employee tardiness was tolerated by Howard. However, Mun has offered no evidence about how often these acts were committed, how close in time they were to one another, what other factors might explain such things as tolerating Ms. Quick's tardy arrival at work (did the supervisor look the other way because Ms. Quick had to take her kids to school, etc.) or other evidence that would allow a jury to evaluate whether the acts actually were racial in nature, much less adequate to support a conclusion that they were so severe and pervasive as to support an inference that UAA had created an abusive work environment. This court looks for guidance to the Ninth Circuit case law. As the discussion in *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir.2003) [79] which upheld an award of summary judgment to the defendant makes clear, an abusive environment requires proof of far more serious and clearly racial acts than Mun has presented in his opposition here.

### b. Religious Discrimination

■ Mun's opposition to UAA's summary judgment motion on his claim that UAA subjected him to religious discrimination benefits greatly from the fact that "very little" evidence is needed to create a *prima facie* case of discrimination.[80] The evidence that he offers in support of his claim includes his affidavit, in which he declares that Weems encouraged employees to join prayer groups at work, and that "employees who participate in prayer groups get promotions and salary increases [while] employees who do not, do not get promoted."[81] Although Mun does not specifically deny his own participation in prayer groups, he does assert that he does not share Weems' religious beliefs.[82] That assertion, in light of his other assertions about being denied promotions and equal pay, suggests that Mun did not participate in prayer groups at work, while others who did received promotions and salary increases. This suggestion, in turn, creates an inference that UAA discriminated against Mun on the basis of religion and establishes a *prima facie* case of discrimination.

Rather than rebutting Mun's *prima facie* case by articulating a legitimate, nondiscriminatory reason for the alleged promotions and salary increases, UAA simply criticizes Mun's claim of religious discrimination as based on "[m]ere allegations, accompanied by no supporting evidence."[83] However, Mun's allegations do not need to be accompanied by supporting evidence because they *are* evidence. Because Mun's allegations are contained in his affidavit, and he has sworn that the facts he alleges in his affidavit are based on his personal knowledge,[84] they constitute evidence upon which summary judgment may be opposed.[85]

79. *Id.* at 642–644 (discussing circuit precedent).

80. *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir.1991).

81. Doc. 46, affidavit of John Mun at 18, ¶ 44.

82. *Id.*

83. Doc. 50 at 12.

84. Doc. 46, affidavit of John Mun at 1, ¶ 1.

85. Fed. R. Civ. P. 56(e).

## 2. Title VII Retaliation Claim Against UAA

In addition to prohibiting an employer from discriminating against its employees based on their race and religion, Title VII also prohibits an employer from retaliating against employees who oppose its acts of unlawful discrimination.[86] With retaliation claims, as with discrimination claims, the three-step *McDonnell Douglas* burden-shifting analysis applies. The second and third steps of the analysis—requiring the employer to articulate a legitimate, non-discriminatory reason for its alleged discrimination and the employee to offer evidence showing that the reason is pretext for unlawful discrimination—are the same for both retaliation and discrimination claims. But the first step—establishing a *prima facie* case—is different.

To establish a *prima facie* case of retaliation, Mun must offer evidence showing that 1) he engaged in a protected activity; 2) he suffered an adverse employment action; and 3) there was a causal link between the protected activity and the adverse employment action.[87] A protected activity includes protesting the deprivation of civil rights.[88] An adverse employment action, for purposes of a retaliation claim, is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a protected activity."[89] To demonstrate the causal link between his engaging in a protected activity and the adverse employment action, Mun may offer evidence of the proximity in time between the two events[90] and "must make some showing sufficient for a reasonable trier of fact to infer that [UAA] was aware that [Mun] had engaged in [a] protected activity."[91]

Mun claims that UAA retaliated against him for filing grievances about the discrimination he allegedly suffered. To support that claim, he alleges that he was 1) denied his right to participate in UAA's governance proceedings; and 2) subjected to a hostile work environment. UAA argues that its restriction of Mun's participation in governance proceedings did not amount to an "adverse employment action" and that it did not subject Mun to a hostile work environment.

Although the parties' dispute centers on the specific acts UAA allegedly took, they do not address two issues that must be considered first. The first issue is whether Mun engaged in a "protected activity." Under Title VII, a "protected activity" is opposition to an employer's "unlawful employment practice." An "unlawful employment practice" is discrimination against employees on the basis of their "race, color, religion, sex, or national origin . . . ."[92] Thus, Mun must have opposed unlawful discrimination by UAA to have engaged in a protected activity, and he must have done so before the alleged retaliation in order to establish a causal link between the protected activity and the alleged retaliation.

---

**86.** 42 U.S.C. § 2000e—3(a).

**87.** *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196—97 (9th Cir.2003).

**88.** *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000).

**89.** *Little*, 301 F.3d at 970 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1244(9th Cir. 2000).

**90.** *Raad*, 323 F.3d at 1197 (quoting *Ray*, 217 F.3d at 1244).

**91.** *Id.* (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982)).

**92.** 42 U.S.C. § 2000e—2(a)(1).

The only activities discussed in the briefs that may qualify as "protected activities" are the administrative grievances Mun filed with UAA in October of 2002; on January 7, 2003; and on August 19, 2003; and the charges he filed with the EEOC on June 20, 2003, and November 17, 2003. But because the alleged retaliatory acts began before all but the October of 2002 grievances were filed, only that grievance could be a protected activity that may have triggered UAA's retaliation.

For the October of 2002 grievance to constitute a protected activity, Mun must have filed it in opposition to racial or other unlawful discrimination by UAA. Unfortunately, neither party has submitted a copy of that grievance. However, a copy of the January 7, 2003, administrative grievance has been submitted, and it sheds some light on the nature of the October of 2002 grievance. In the January 7, 2003, grievance, Mun explains that the October of 2002 grievance related to his dispute about overtime pay and suggests that the "issue of discrimination" is widespread at UAA.[93]

The court concludes that there is a genuine issue about whether Mun's filing his October of 2002 grievance was a protected activity. The references to that grievance and the "issue of discrimination" contained in the January 7, 2003, grievance indicate that the October of 2002 grievance may have accused UAA of denying him overtime pay on the basis of his race. Furthermore, in light of the fact that racial discrimination allegations pepper the two other grievances he filed with UAA, it would not be surprising if they were also included in his October of 2002 grievance. If so, Mun's filing that grievance would have been a protected activity.

Besides the issue of whether Mun engaged in a protected activity, the second issue the parties do not address is whether there was a causal link between that activity and UAA's alleged adverse employment actions. To establish causation, Mun could show that there was a close proximity in time between the protected activity and the adverse employment action,[94] and that UAA knew about the protected activity.[95]

The court concludes that Mun has established a causal link between his protected activity and the alleged adverse employment actions. UAA's alleged adverse employment actions—prohibiting Mun from participating in governance proceedings and subjecting him to a hostile work environment—occurred shortly after Mun engaged in a protected activity by filing his October of 2002 grievance. Furthermore, UAA must have known that Mun had engaged in a protected activity because that activity was filing a grievance with UAA.

Having concluded that there are genuine issues about whether Mun engaged in a protected activity and whether there was a causal link between that activity and UAA's alleged adverse employment actions, the court will now address the issues raised by the parties:

### a. Prohibition Against Participating In Governance Proceedings

The parties agree that on October 22, 2002, Weems prohibited Mun from participating in UAA's governance proceedings.[96] Mun argues that this was retaliation for his filing grievances about being denied overtime pay earlier that month.[97] UAA disagrees, asserting that the real reason for the prohibition was because Mun's

---

**93.** Doc. 27, affidavit of Mark E. Ashburn, attachment 1.

**94.** *Raad,* 323 F.3d at 1197 (quoting *Ray,* 217 F.3d at 1244).

**95.** *Id.* (citing *Cohen,* 686 F.2d at 796).

**96.** Doc. 27, affidavit of Rick Weems at 3, ¶ 9.

**97.** Doc. 46, affidavit of John Mun at 13, ¶ 28.

workload was so great that the prohibition was necessary to minimize his overtime.[98] Also, UAA claims that the prohibition only lasted until December of 2002 [99] and argues that, therefore, it was temporary and cannot constitute an "adverse employment action."

 UAA's explanation about why it prohibited Mun from participating in governance proceedings is legitimate and nondiscriminatory, but Mun has offered evidence that calls its credibility into question. That evidence comprises UAA regulations, a letter from UAA's president, and an affidavit by Jason Brune. The regulations provide that governance participation is "considered to be within the regular work duties" of UAA employees.[100] The letter from UAA's president admonishes supervisors not "to prohibit staff from participating in governance." [101] Brune, who was, like Mun, a CAPP Coordinator, declares that attending governance meetings is "necessary" for that job.[102] This evidence indicates that governance participation is an important part of Mun's workload and suggests that it must be balanced with Mun's other duties, and not eliminated entirely. It calls the credibility of UAA's explanation into question because it indicates that prohibiting Mun from attending governance meetings would make it more difficult, not less, for him to do his job.

Besides challenging the credibility of UAA's explanation for why it prohibited him from participating in governance proceedings, Mun has offered evidence that the prohibition was an adverse employment action. For purposes of a retaliation claim, adverse employment actions must be reasonably likely to deter [Mun] or others from engaging in a protected activity. As noted above, participating in governance proceedings is an important part of Mun's job. Therefore, it is reasonably likely that being prohibited from doing so would discourage Mun or others from filing grievances or engaging in other protected activities.

Furthermore, Mun has offered evidence that his ability to participate in governance lasted beyond December of 2002, the month that UAA alleges it restored his right to participate. The evidence consists of an email dated October 31, 2003, in which Mun announces his resignation from the Master Plan Steering Committee "[d]ue to pressure and reprisal for participating in governance." [103] Although this email supports UAA's claim that it allowed Mun to resume participating in governance—at least in some capacity—after he was banned from doing so on October 22, 2002, it also suggests that his freedom to participate in governance was not fully restored.

Because there are genuine issues about whether UAA's prohibiting Mun from participating in governance was retaliation for his engaging in protected activities and whether that restriction constituted an adverse employment action, UAA is not entitled to summary judgment on Mun's retaliation claim based on UAA's prohibition.

### b. Hostile Work Environment

UAA is entitled to summary judgment on Mun's retaliation claim based on a hostile work environment. As the court concluded above, Mun has failed to create an issue about whether he was subjected to a hostile work environment. Furthermore,

---

**98.** Doc. 27, affidavit of Rick Weems at 3, ¶ 9.

**99.** *Id.*

**100.** Doc. 46, affidavit of John Mun, ex. II.

**101.** *Id.*, affidavit of John Mun, ex. JJ.

**102.** Doc. 48, affidavit of Jason Brune at 2, ¶ 5.

**103.** Doc. 46, affidavit of John Mun, ex. X.

none of the acts that Mun cites as contributing to a hostile work environment, if considered individually, would be reasonably likely to deter him from engaging in protected activities in the future.[104] Consequently, none of them was an "adverse employment action" for purposes of his retaliation claim.

### 3. Equal Protection Claims Against Weems and Howard

Under 42 U.S.C. § 1983, Mun may challenge Weems and Howard's actions on the ground that they deprived him of his federal constitutional or statutory rights. As with his Title VII claims, Mun must support his § 1983 claims with evidence that Weems and Howard intentionally discriminated against him.[105] Similarly, if Mun fails to establish that Weems and Howard intentionally discriminated against him for purposes of establishing UAA's liability under Title VII, then he "also fails to establish intentional discrimination for purposes of § 1983."[106] On the other hand, "[e]vidence that is sufficient to create a genuine issue of material fact for purposes of [Title VII] also serves to create a genuine issue for purposes of § 1983."[107]

In his complaint, Mun makes the same allegations in support of his § 1983 claims against Weems and Howard as he does for his Title VII claims against UAA.

### a. Weems

For purposes of summary judgment, the following acts may be attributed to Weems:

1) denying Mun's application to be Director of Summer Sessions on August 31, 2001;[108] 2) eliminating the Curriculum Manager position in 2003;[109] 3) denying Mun overtime pay,[110] 4) denying Mun pay equal to Brune and Bodde;[111] and 5) denying Mun promotions and salary increases on the basis of religion.[112]

Weems is entitled to summary judgment on the second act listed by Mun, because Mun has failed to create a genuine issue about whether that act violated his rights under Title VII and, consequently, has not created a genuine issue about whether they violated his rights under § 1983. Perhaps Weems would be entitled to summary judgment on the first and fourth acts because the statute of limitations has run. Those acts—denying Mun's application for Director of Summer Sessions and denying him pay equal to Brune

---

**104.** The act that is closest to being an adverse employment action is Howard's alleged transfer of Mun into Degree Services. Even assuming that the transfer was an adverse employment action, it cannot form the basis of Mun's retaliation claim because he has not provided evidence of when that act occurred. *See* Doc. 46, affidavit of John Mun at 8, ¶ 22(f); 11, ¶ 22(r); 18 ¶ 45(c). That evidence is critical because the act must have occurred after Mun engaged in a protected activity for it to have been retaliatory.

**105.** Sischo–Nownjehad, 934 F.2d 1112.

**106.** *Id.*

**107.** *Id.*

**108.** Doc. 27, affidavit of Rick Weems, attachment C (checklist denying Mun's application for Director of Summer Sessions and signed by Weems).

**109.** *Id.*, affidavit of Rick Weems at 3 ¶ 8 (discussing elimination of Curriculum Manager position in Enrollment Services while Weems was head of that department).

**110.** Doc. 46, affidavit of John Mun, ex. T (letter from Weems admitting that Mun was not paid overtime when he should have been).

**111.** *Id.*, affidavit of John Mun, ex. A and B (memoranda approving salary increases for Brune, Bodde, and Mun).

**112.** *Id.*, affidavit of John Mun at 17—18, ¶ 44.

and Bodde—occurred in August of 2001 and November of 1999, respectively. The statute of limitations governing a § 1983 action is the statute of limitations for personal injury actions in the state where the alleged § 1983 violation occurred.[113] The alleged § 1983 violations occurred in Alaska, where the statute of limitations for personal injury actions is two years.[114] Mun filed suit in this court on October 17, 2003, more than two years after Weems denied his application for Director of Summer Sessions and denied him pay equal to Brune and Bodde. Consequently, his § 1983 claims based on those acts appear to be untimely. However, while the statute of limitations defense is raised in the answer,[115] Weems has not presented an argument based on the statute of limitation in his briefing, and Mun has not had a chance to try to show that for some reason the claims are timely.

Weems is not entitled to summary judgment on Mun's claims based on the third and fifth acts because Mun has created a genuine issue about whether those acts violated his rights under Title VII and, consequently, has created a genuine issue about whether they violated his rights under § 1983.

### b. Howard

Howard is entitled to summary judgment on Mun's § 1983 claims against her. Mun has not created a genuine issue about whether any of the acts she allegedly committed violated his rights under Title VII. Consequently, he cannot pursue a claim against her under § 1983.

### B. Motion to Strike

At docket 45, Mun moves to strike thirteen of the fourteen attachments to Mark E. Ashburn's affidavit in support of UAA,

Weems, and Howard's summary judgment motion. In addition, Mun moves to strike pages two through five of that motion on the ground that it refers to the attachments that Mun seeks to strike. Mun argues that all the material it seeks to strike is hearsay, irrelevant, and prejudicial.

The material that Mun seeks to strike consists of copies of the grievances he filed with UAA and the EEOC; decisions by UAA, the EEOC, and the Alaska Commission for Human Rights regarding those grievances; and a section of UAA's regulations. This material is not hearsay because UAA has not offered it to prove the truth of any of the matters it asserts. In addition, it is not irrelevant because it is valuable background material that allows the court to better understand the events of this case. Finally, although Mun argues that the material should be excluded as prejudicial, that is not the standard for excluding evidence. Under Federal Rule of Evidence 403, to be excluded, evidence must be unfairly prejudicial. The material that Mun seeks to strike is not unfairly prejudicial.

### V. CONCLUSION

For the reasons set out above:

The **motion at docket 27** is **GRANTED** in part and **DENIED** in part, as follows:

1. It is **GRANTED** with respect to Mun's Title VII racial discrimination claims based on a) his denied application for Director of Summer Sessions; b) the elimination of the Curriculum Manager position; c) being denied overtime pay when he was Facilities Scheduling Coordinator; d) being denied pay equal to University of Alaska employees in Fair-

113. Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

114. AS 09.10.070(a).

115. Doc. 7 at ¶ 4.

banks and Juneau; e) being subjected to a hostile work environment;

2. It is **DENIED** with respect to Mun's Title VII racial discrimination claims based on a) being denied overtime pay when he was CAPP Coordinator, and b) being denied pay equal to Brune and Bodde;

3. It is **DENIED** with respect to Mun's Title VII religious discrimination claim;

4. It is **DENIED** with respect to Mun's Title VII retaliation claim based on UAA's prohibiting him from participating in governance proceedings;

5. It is **GRANTED** with respect to Mun's Title VII retaliation claims based on a) UAA's allegedly subjecting him to a hostile work environment;

6. It is **GRANTED** with respect to Mun's § 1983 claim against Weems based on Weems' eliminating the Curriculum Manager position;

7. It is **DENIED** with respect to Mun's § 1983 claims against Weems based on Weems' a) denying Mun's application for Director of Summer Sessions; b) denying Mun overtime pay; c) allegedly denying Mun pay equal to Brune and Bodde; and d) allegedly denying Mun promotions and salary increases on the basis of religion.

8. It is **GRANTED** with respect to Mun's § 1983 claims against Howard.

The **motion at docket 45 is DENIED.**